Fkeeman, J.,
delivered the opinion of the court:
A question as to1 the constitutionality of the act of March 6, IS'? 5 [ch. 19], is presented in this case, which we dispose of as preliminary to any review of the opinion formerly announced, or rather decree rendered in this case.
This act provides substantially, “that in all cases now pending- in the supreme court, or hereafter brought thereto, in which the judges shall be equally divided, the judgment shall be determined as follows: Tf the case depend upon the constitutionality of any act of the general assembly, then such judgment or decree shall be in favor of the validity of such act. In all other cases, the judgment or decree of the court below shall be affirmed.’ ”
This, with other cases, perhaps, was pending at the passage of the act, and probably the cases had been heard and the court, then consisting of six judges, were equally divided in opinion on them.
The question is, had the legislature the power, under the constitution, to enact what judgment should be rendered in such cases? This we take to- be the real question in this case.
By the constitution, the powers of government are distributed among the departments — the legislative, the executive, and judicial — and “no person or persons belonging to any one of these departments shall exercise any of the power properly belonging to either of the others, except in cases herein directed or permitted.” Art. 2, secs. 1 and 2. By the schedule to the constitution of 1870, it was provided that six judges should compose this court, until there should be a vacancy occurring after the first of January, 1873. Sec. 2 [of schedule].
The court thus constituted was the supreme judicial tribunal of this department of the government. Its function was to decide all cases on the law and facts that might *237 be brought before it in accordance with the jurisdiction conferred by the constitution. In accordance with the genius of such an organization, a majority of the court would be required to render a decision, for if this was not the case, then a minority might do it, a conclusion to which no one, we take it, would assent. In any court, however, whatever decree the cocui: shail give must be the result of its own judgment, in the performance of the functions assigned it by the constitution. Ho other department of government has the right to indicate or dictate what that judgment shall be. This would be to usurp the judicial function, confided exclusively by the constitution to the judicial department.
Whether the legislature might or might not have enacted a rule for the government of the court on this subject in the future, may be possibly a different question, but that it could prescribe what the court should do in cases then before the court, we think it beyond all question to overstep the line limiting their power under the constitution. However, we may say, it would seem difficult to distinguish in principle between the two cases — that is, of an enactment operating on cases then pending, and on future cases. In either case, it is not to prescribe a rule of future conduct to the citizen, which is the essential clement of a law operating on the rights of a citizen, but would be to dictate a judgment for the court not based on the law and the facts in the case, but upon a certain state of opinion as held by the judges of the court, in which a certain result is required to be entered as the judgment of the court. This judgment, it is evident, would be the judgment or the result declared by the legislature, and not by the court. In addition, if the legislature could say an affirmance should be the result of an equal division of the members of the court in opinion, why not with the same propriety, say that a minority should govern; or that the then oldest judges agreeing, or the then youngest; or, to reduce it to an absurdity, the three judges who *238 should weigh the most; or any other arbitrary rule that body might choose to adopt? We cannot see where the-limit shall be fixed in such a ease, except at the discretion of the legislature, if we once admit they can fix any rule at all on this subject. It may as well have been required that the opinion of the chief justice should have the right to decide the case, or his opinion should be the basis of the decree, as that a certain decree should be rendered because the court could not agree upon one for itself. This last is certainly the leading feature of the law before us — that is, where the court cannot agree upon an opinion or judgment, one is presented by the legislature arbitrarily, regardless of the merits of the case before the court. This certainly is a usurpation of the judicial function, and far from the true principle of legislative or law-making action.
We need not refer to the various cases found in our own reports, or those cited by counsel from other states, in support of our views on this question. We but cite from the opinion of this court in the case of Mabry v. Baxter-(manuscript at Knoxville) [since reported in 11 Heis., 682-700], in which an enactment of the legislature was held unconstitutional, as operating on suits then pending, and prescribing what judgment the court should render upon a simple motion to be made by defendant for the purpose. In that case it had been provided that in a certain class of cases where several persons were sued in the same action then pending, where there were several defendants, upon motion of any defendant, or either of them, at any time before trial or final judgment, should have the right, on motion, to sever and have the suit as to himself separately tried, and the cause after this was to' stand against each defendant, in all respects, as if originally instituted separately against him or them. The chief justice said, in reference to this feature of the act, that ‘íto entitle the defendant to a severance, a new right conferred, they are tO' make a motion in court; this motion must be acted on by the judge and a. record made; that *239 upon motion of the defendant, lie. is entitled to a severance and a separate trial. The judge makes the order nominally, hut as he has no discretion, and he acts under the order of the legislature, it is therefore, to all intents and, purposes, the act of the legislature.” He adds, both in the case of severance and the transfer to the court of the residence of the defendant — provided for in the act — it is not the judgment of the court or judge. He is allowed no discretion, whether the severance or removal is to be allowed. He is commanded to give the judgment, and the exact judgment to be given is prescribed by the legislature. These are held to be judicial and not legislative acts, and so the enactment was held unconstitutional.
If this was correct as to a preliminary judgment to be entered by the court, much more is the law now under consideration obnoxious to the same objections, for it prescribes what shall be the judgment of the_court on the merits of the case; and malíes the rights of the parties to the case depend, not on the judgment of the court trying it, but on the mandate of the legislature, which has no power to try or determine it, either the one way or the other. In other words, if the court cannot agree upon a judgment, the, legislature interposes and prescribes one to meet the emergency, and thus settles, by an enactment, the rights of the litigants, instead of the court.
On a constitutional question the enactment is equally objectionable, by arbitrarily prescribing a judgment, affirming the constitutionality of the acts, if the court cannot agree upon the questions. Both eases, however, stand on the same principles, and are equally obnoxious to the objections we have given.
The result would be that at one term, under the direction of the legislature, the court would enter up a judgment giving a party a decree in his favor in a certain state of facts, or holding a certain law to be constitutional and valid. At the next term, on precisely the same state of facts, upon further consideration, the court, in its opinion, *240 would bold a different judgment should be the result of these facts. And iu the other case, that the same law was unconstitutional and void. It -may be said.the court, in any case or either case', might change its opinion and overrule its former holding. This is very true, but in the one case, it would be a reversal or overruling the opinion or mandate of the legislature; in tire other, the opinion of the court, as formerly announced. It could not be said in the first case that the court had changed its opinion or overruled the law as held in the former opinion, because the court had given no sucia opinion — had made no such ruling as the law; while in the other, this would accurately express what" was done. This view brings out clearly the true idea that underlies this enactment — that is, that the judgment required to be rendered is that of the legislature and not of the court nominally rendering it. We hold, therefore, the act to be void for these reasons. We add, that the law is probably subject to other objections, but we think this suffices to show clearly its unconstitutionality, without need of further discussion. The former judgment or decree must be set aside and held not to be the judgment of the court.