J. H. DOANE, *et al.*, *v.* KNOXVILLE INVESTMENT CORPORA-
TION.

*(Nashville.* December Term, 1928.)

Opinion filed April 15, 1929.

78

W. R. Henderson, for complainants, appellants.

Testerman & Burnett, for defendant, appellee.

Mr. Justice Cook delivered the opinion of the Court.

This cause arose out of a transaction involving real estate alleged to have been sold through the agency of the defendant. The bill was filed by Bales, vendor, and Doane, the vendee, under a warranty deed to charge the defendant with a loss resulting from its failure to discharge a lien on the land with funds intrusted by them, or by Bales to its care.

The chancellor sustained defendant's demurrer to the bill, holding (1) that under the facts presented the defendant was acting for itself and not as agent for complainants, and is not liable; (2) that complainants admitted the sufficiency of the demurrer by failing to set it down for hearing at the first term.

The complainants appealed and here insist that the bill states a cause of action and under the circumstances it was error to dismiss it for their failure to set the demurrer down for hearing.

The bill, as amended, states a good cause of action. It shows that defendant, acting as agent for Bales, sold the land to Doane and represented that the property, incumbered by a deed of trust to secure a note of $917

to S. R. Rambo, was unencumbered, and agreed with Bales to remove the encumbrance simultaneously with the transfer to Doane; and that defendant received from Bales $917 of Doane's purchase money under an express agreement with Bales to apply it to the satisfaction of the mortgage debt and have the lien released. It is charged that defendant wrongfully or negligently paid the money to Rambo without requiring him to produce the note, and without obtaining a valid release of the lien from the holder of the lien note. It appears from the bill that subsequently John A. Wray, who held the note by indorsement from Rambo, reduced it to a judgment for $1122.96 and was about to sell the land to satisfy the judgment when complainants were compelled to pay it to protect the title.

If the defendant, as agent for Bales, represented to Doane that the property was unencumbered and thus induced the sale and accepted from Bales a sufficiency of the proceeds of the sale to remove the encumbrance under a promise to devote the money to that use, and to relieve Bales from liability on the covenance of his deed to Doane, it (the defendant) would be required to put the money to the use intended and in the discharge of the duty assumed by it would be held to the exercise of ordinary care. For any loss sustained by complainants as a result of defendant's failure to do what it assumed to do under the circumstances shown in the bill, the defendant would be liable. 2 C. J. Agency, 717-722.

Beyond the question whether the bill states a cause of action, the chancellor held that complainants admitted the sufficiency of the demurrer by their delay in setting it down for hearing, and for that additional reason dismissed the bill. This presents the inquiry of

whether a demurrer, regardless of its sufficiency, must be sustained by the chancellor because of the inference that complainant admits its sufficiency through failure to set it down for hearing at a given time, and if so when the complainant must move to avoid the inference. Existing statutes and rules that control the course of practice and procedure in courts of chancery do not aid the inquiry by any express provision, though we have decisions holding that the chancellor cannot peremptorily dismiss a bill, for failure to prosecute it, without preliminary rule or notice affording the complainant an opportunity to explain the delay. *Park* v. *Meek,* 1 Lea, 78; *Ford* v. *Bartlett,* 3 Baxt., 22.

After its inception, the course of English equity jurisprudence was directed by rules of practice and procedure, and among them the rule that a demurrer should be filed within a given time after the bill, and upon the filing either party might set it down for argument immediately. In addition, the time was fixed within which complainant was required to move for the disposition of a demurrer, else labor under the inference of having admitted its sufficiency. But that rule was not inflexible. Failure to strictly adhere to it would not deprive the complainant of the opportunity of showing the reason for non-compliance and of being relieved, for good cause, of the consequence of delay. 1 Daniels Chy. Pr. (6 Ed.), 594. Intended to expedite trials, the rule was enforced to that end, having regard for substantive rights.

This system of equity jurisprudence followed migration to North Carolina and later became an institution of Tennessee. In 1801 chapter 6, an Act to regulate proceedings in courts of equity, was passed and its practice provisions presented questions for determination. In

*Marsh* v. *Crawford,* 1 Swan, 117, the court, referring to the provisions of this Act and rules of practice in courts of chancery, said:

"We are not to understand that these rules made to expedite and facilitate the preparation of suits are so imperative and inflexible in their nature that upon sufficient cause shown it shall not be in the power of the chancellor to relax them."

In *Lowe* v. *Morris,* 4 Sneed, 69, the court speaking of chapter 365, Acts of 1855, another practice Act, said, in substance, that it could not be supposed that the Legislature intended, by implication, to deprive the court of the exercise of a sound discretion.

In *Graham* v. *Cook,* 6 Yerg., 404, decided in 1834, the question arose under section 29 of the Act of 1801 which provided that "if the complainant shall not . . . set for hearing either the plea . . . or demurrer . . . on or before the second court after filing, . . . the bill may be dismissed, of course with costs during the second term."

The court held it error to dismiss the bill at the second term after the demurrer was filed when an amended bill filed by leave of the court presented new matter requiring an answer by the defendants.

This section 29 was not brought forward in the Code of 1858, but the substance of it has been read into our practice statutes, hence the interpretation of the omitted section becomes material as reflecting upon the rule applied in *McGee* v. *Bank,* 153 Tenn., 357. That opinion seems to have been construed, no doubt because of discussion preceding the conclusion, as laying down an inflexible rule that the sufficiency of a demurrer is admitted by complainant's failure to set it down for argument at

the first term. In that case the question was whether the obligation to move for the disposition of a dilatory plea or demurrer was upon the complainant or upon the defendant under the statute.

The court having in view the statutes hereafter discussed, held it to be upon the complainant, and that cause having stood on demurrer without action for six years it was held that the chancellor did not abuse his discretion in holding the sufficiency of the demurrer admitted and in dismissing the bill on motion of the defendant. In the opinion, the court referred to statutes and to Chancellor's COOPER's decision in *Montgomery* v. *Olwell,* 1 Tenn. Chy., 184, about the duty of complainant to set a plea or demurrer down for argument. Whether at the filing term or the first term after the filing term was not determined in the McGee case, nor is that opinion to be considered as holding that any statute expressly or by implication imposes the imperative duty on the chancellor to declare that a complainant who fails to move for the disposition of a demurrer within a given time admits that his bill, however meritorious, fails to state a good cause of action, or as otherwise expressed, that the demurrer to the bill, however insufficient, must be held good by the chancellor. Such a construction of a practice Act, it seems would render the Act void as a legislative invasion of judicial authority. *Perkins* v. *Scales,* 2 Shan. Cas., 235; *Northern* v. *Barnes,* 2 Lea, 612.

In applying the rules of practice and procedure intended to direct the course of equity jurisprudence, the courts have avoided the formalism that characterized the early common-law practices. Much has been necessarily left to the discretion of the chancellor, familiar with the situation of the parties and the course of business in his

court. The spirit of that broad system has never been suppressed by narrowing practice statutes, nor should that be done by implying to such statutes that intent. Pertinent statutes are as follows:

Code, section 4393, Shannon's Code, 6203: "If the plaintiff conceives any plea or demurrer to be naught, either for the matter or manner of it, he may set it down with the clerk to be argued; or if he thinks the plea good but not true, he may take issue upon it, and proceed to trial. If the plea be found false, the complainant shall have the same advantages as if it had been so found by verdict at common law."

Code, section 4394, Shannon's Code, 6204: "A demurrer or a plea shall be set for argument at the first term."

Section 4393 of the Code makes it obligatory on the complainant to set the demurrer down for argument and section 4394 requires that it shall be set down at the first term.

Under section 4389, Code, Shannon's Code, 6199, and section 4390, Code, Shannon's Code, 6200, the defendant could set the demurrer down for hearing but the statute does not impose the burden upon him to do so. No statute or rule expressly declares what consequence follows complainant's delay in speeding a cause that stands on demurrer, but it follows from the fact that he owes a duty to take action that the chancellor may hold him responsible for unreasonable delay and declare the sufficiency of the demurrer admitted, as was done in *McGee* v. *Bank.*

When the Code of 1858 was adopted, the chancery courts held each year two short terms continuing only a few days in most of the counties. Pleadings, especial-

ly bills, were filed between terms, and upon process returnable to the term, served more than five days before return day, the defendant had three entire days to make defense if court continued in session. If the defendant filed his demurrer before adjournment, he could, if he so desired, obtain an order setting it down for hearing. If he sought delay, he could wait until the three days, if court remained in session, or if it adjourned before the third day, until just before adjournment on the last day of the term when he could file his demurrer with the clerk. It could not be disposed of under such circumstances at that time, therefore sections 4393 and 4394 of the Code requiring the complainant to set the demurrer down at the first term necessarily means the first term after the demurrer is filed, and if filed during the term it would mean the next term.

Statutes designed to prevent delay, as we have seen, have never been enforced so as to defeat substantive rights, and that would result if these sections of the Code should be construed as meaning that the chancellor must dismiss the demurrer at the next term after it was filed without regard to the circumstances surrounding the parties.

After thus reviewing the statutes and rules derived from them, it becomes necessary to apply them to the particular case. But first it must be noted that complainant's obligation to move is during the next term after the demurrer was filed, and in the absence of a statute or rule fixing the day for action by him during the term in which he is required to act, it would seem that action any time during the term would meet the requirement.

The terms at Knoxville fixed by statute are the first Mondays in May and November each year. The bill was filed July 15, 1927. The record does not show when the May term ended. It discloses no step of procedure until December 7, 1927, during the next term, when complainants moved to amend the bill and were confronted by defendant's motion that their failure to set the demurrer down was an admission of its sufficiency.

We think under the circumstances the chancellor made an improper application of the rule. The next term had not expired. The complainants were required to move during the next term, that is, the first term after the demurrer was filed. They were moving to amend their bill during the term within which they were required to act, and could not be held in default at that time. It follows, therefore, that the decree of the chancellor must be reversed and the cause is remanded for further proceedings.